## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LEE W. CROSSLEY,

               Plaintiff,

   v.

KILOLO KIJAKAZI,[1]

               Defendant.

CIVIL ACTION NO. 3:20-CV-02298

(MEHALCHICK, M.J.)

### MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Lee W. Crossley ("Crossley")'s claims for a period of disability and disability insurance benefits and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Crossley protectively filed an application for Title II benefits on February 25, 2014, and an application for Title XVI benefits on March 17, 2016. (Doc. 15-4, at 5). In these

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applications, Crossley claimed disability beginning October 15, 2012. (Doc. 15-4, at 5).
Crossley's claims were initially denied by the Social Security Administration ("SSA") on
February 20, 2015. (Doc. 15-4, at 5). Crossley filed a request for a hearing before an
Administrative Law Judge ("ALJ") on March 17, 2015, which was held on December 21,
2016, before ALJ Frank Barletta ("ALJ Barletta"). (Doc. 15-4, at 5). In a written decision
dated May 26, 2017, ALJ Barletta determined that Crossley was not disabled and therefore
not entitled to the benefits sought. (Doc. 15-4, at 2).

On August 31, 2018, Crossley protectively filed another application for Title XVI
benefits, alleging disability beginning May 24, 2017. (Doc. 15-6, at 2). The claim was initially
denied by the SSA on March 15, 2019. (Doc. 15-2, at 72). Crossley filed a request for a hearing
before an ALJ, which was held on October 2, 2019, before ALJ Charles A. Dominick ("ALJ
Dominick"). (Doc. 15-3, at 3). In a written decision dated January 22, 2020, the ALJ
determined that Crossley was not disabled and therefore not entitled to the benefits sought.
(Doc. 15-2, at 69). Crossley appealed the decision of the ALJ to the Appeals Council, who,
on October 8, 2020, denied Crossley's request for review. (Doc. 15-2, at 2).

On December 8, 2020, Crossley commenced the instant action. (Doc. 1). The
Commissioner responded on May 13, 2021, providing the requisite transcripts from the
disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with
Crossley alleging four errors warranting reversal or remand. (Doc. 19; Doc. 23; Doc. 31).

II.   **STANDARDS OF REVIEW**

To receive benefits under Title XVI of the Social Security Act, a claimant must
demonstrate an "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[2]

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

## B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decision maker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Crossley was disabled, but whether the Commissioner's determination that Crossley was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial

- 4 -

evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III. **THE ALJ'S DECISION**

In a decision dated January 22, 2020, the ALJ determined Crossley "has not been under a disability, as defined in the Social Security Act, since August 31, 2018, the date the application was filed." (Doc. 15-2, at 84). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920(a).

A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Social Security Regulations ("SSR") deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. The ALJ determined Crossley "has not engaged in [SGA] since August 31,

2018, the application date." (Doc. 15-2, at 74). Thus, the ALJ's analysis proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "status post fibrohistiocytic sarcoma of the left elbow with complications including left radial neck fracture, vitamin D deficiency, osteoarthritis of the hips, thoracic spine, and left knee, obesity, post-traumatic stress disorder, and depression." (Doc. 15-2, at 74). Additionally, the ALJ found that Newcomb has the following non-severe impairments: gastro-esophageal reflux disease, asthma, and allergies. (Doc. 15-2, at 74-75).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926). The sections in this appendix are commonly referred to as "listings." If the ALJ determines the claimant's impairment or impairments meet a listing, then the claimant is considered disabled. 20 C.F.R.

§ 416.920(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 416.920(d). The ALJ considered listings 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Doc. 15-2, at 75). Here, the ALJ determined that none of Crossley's impairments, considered individually or in combination, meet or medically equal the severity of a listed impairment. (Doc. 15-2, at 75).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)-(c).

Crossley alleged that his impairments caused the following symptoms: status post-cancer of the upper arm, post-traumatic stress disorder ("PTSD"), pain in his knees, back pain, chronic neck pain, depression, and anxiety. (Doc. 15-2, at 78). Crossley also alleged: "difficulties lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs and using his hands;" "difficulties completing tasks;" "difficulties with household chores and yardwork;" "difficulties sleeping due to panic attacks and bad dreams;" and "difficulties with

concentration and attention." (Doc. 15-2, at 78). After examining his statements and the medical evidence, the ALJ found that Crossley's impairments could reasonably be expected to cause the alleged symptoms, but that his statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 79). The ALJ then went on to detail Crossley's medical records and treatment history. (Doc. 15-2, at 79-82).

Based on his consideration of the above referenced medical opinions and of the other relevant evidence of record, the ALJ assessed that, during the relevant period, Crossley had the RFC "to perform sedentary work," but with the following limitations:

> [Crossley] is to be given the opportunity to alternate between sitting and standing at least every 30 minutes. [Crossley] is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs. [Crossley] is to avoid crawling and climbing on ladders, ropes, and scaffolds. [Crossley] is to avoid unprotected heights and dangerous moving machinery. [Crossley] is to avoid overhead reaching with the bilateral upper extremities. [Crossley] is limited to no more than frequent reaching in all other directions with bilateral upper extremities. [Crossley] is limited to no more than occasional use of foot controls. [Crossley] is to avoid concentrated exposure to dusts, fumes, gases, and other pulmonary irritants. [Crossley] is to avoid exposure to extreme temperatures, extreme humidity, wetness, and vibration. [Crossley] is limited to simple routine tasks, but not at a production rate pace. [Crossley] is limited to occupations requiring no more than simple work related decisions with no more than occasional changes in the work setting. [Crossley] is limited to occasional interaction with supervisors, coworkers and the public.

(Doc. 15-2, at 77-78).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv).

Here, the ALJ determined Crossley is unable to perform any past relevant work. (Doc. 15-2, at 82). The ALJ noted Crossley's past relevant work including positions as a material handler, fast food cook, concrete laborer, steel laborer, and printer, but the exertional requirements of each exceeded Crossley's RFC. (Doc. 15-2, at 82).

F.  STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Crossley's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Crossley can perform. (Doc. 15-2, at 83). In making this determination, the ALJ relied on the expertise of the vocational expert ("VE"), who testified that Crossley could perform the requirements of occupations such as a sorter, hand packer, and production laborer, which are occupations with open positions ranging from 13,000 to 28,000 nationally. (Doc. 15-2. at 83-84).

Accordingly, the ALJ determined that Crossley was not disabled during the relevant period and denied his application for benefits. (Doc. 15-2. at 84).

IV.   **DISCUSSION**

On appeal, Crossley advances four main arguments. (Doc. 19, at 5). First, he asserts that the ALJ's decision is constitutionally defective because the Commissioner under whom the ALJ issued the final decision serves a longer term than the President and is removable only for cause, in violation of the separation of powers. (Doc. 19, at 5). Second, Crossley contends that his 2014 application for social security benefits was denied by an ALJ who lacked a constitutional appointment as required by the Appointments Clause; thus, the previous case should be remanded for a hearing before a different, constitutionally-appointed ALJ. (Doc. 19, at 5). Third, Crossley asserts that the ALJ erroneously rejected the opinions of the treating physician and consultative psychologist. (Doc. 19, at 5). Fourth, Crossley argues that the ALJ failed to present a hypothetical question containing all of Crossley's credibly established limitations to the VE. (Doc. 19, at 5). In response, the Commissioner asserts that substantial evidence supports the ALJ's decision and that Crossley has failed to provide evidence demonstrating his disability or to explain how any alleged error by the ALJ should have led to a favorable decision. (Doc. 23, at 13). For the following reasons, the Court finds that the ALJ properly applied the law and that substantial evidence supports the ALJ's findings.

A.   THE ALJ'S DECISION IS NOT CONSTITUTIONALLY DEFECTIVE.

Crossley first asserts that the SSA's decision is constitutionally defective. (Doc. 19, at 5). Crossley alleges such because the Commissioner under whom the ALJ issued his final decision serves a longer term than the President and is removable only for cause, violating the

separation of powers. (Doc. 19, at 5). The Commissioner agrees that the Social Security Act provision limiting the President's authority to remove the Commissioner without good cause, 42 U.S.C. § 902(a)(3), violated the separation of powers. (Doc. 23, at 15). However, the Commissioner argues that "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." (Doc. 23, at 15-16).

Crossley contends the government deprived him of a valid administrative adjudicatory process. In support of his argument, Crossley relies on the Supreme Court decisions in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). (Doc. 31, at 10). In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197. The following year, in *Collins*, the Court held a provision limiting the President to remove the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 42 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates the separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel,

*Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Here, Crossley argues that he was deprived of a valid administrative adjudicatory proves because, under 42 U.S.C. § 405(b)(1), only the Commissioner of SSA can make findings of fact and issue final decisions as to benefits eligibility. (Doc. 19, at 7); *see* 42 U.S.C. § 902(a)(3). Specifically, Crossley argues that:

> The ALJ's delegation of authority to hear and decide [Crossley's] claim came from Commissioner Saul and is therefore constitutionally defective. Similarly, the ALJ decided this case under regulations promulgated by Mr. Saul when he had no constitutional authority to issue those rules. Accordingly, a presumptively improper legal standard was utilized to adjudicate this disability claim at the administrative level.

(Doc. 19, at 7) (citations omitted).

In response, the Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (Doc. 23, at 15). The Commissioner argues that in *Collins*, the Supreme Court explained that even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused him harm. (Doc. 23, at 16).

First, the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to

- 12 -

regard any of the actions taken by the FHFA [challenged on appeal] as void."). The ALJ who denied Crossley's disability claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. (Doc. 23, at 16). Rather, the ALJ was appointed by an Acting Commissioner of Social Security whom the President could remove at any time. (Doc. 23, at 16). Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because the ALJ was properly appointed, Crossley's argument is not persuasive in this case. *See Collins*, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections); *see also Boger v. Kijakazi*, No. 1:20-CV-00331, 2021 WL 5023141, at *3 n.4 (W.D.N.C. Oct. 28, 2021) (finding that "Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an Acting Commissioner of Social Security who could be removed from that office at the President's discretion.").[3]

Second, Crossley has not demonstrated that the unconstitutionality of 42 U.S.C. § 903(a)(3) inflicted compensable harm. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all

---

[3] Other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the SSA. *See Dante v. Saul*, No. 20-CV-0702, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), *but see Collins*, 141 S. Ct. at 1783 (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away'" when discussing whether an acting director is a confirmed director) (quoting *Shurtleff v. U.S.*, 189 U.S. 311, 316 (1903)).

actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *see also Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same); *Amanda B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00434, 2021 WL 4993944, at *9-10 (D. Or. Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where Plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Collins*, 141 S. Ct. at 1774. The Third Amendment was not subject to full judicial review and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *Collins*, 141 S. Ct. at 1785, 1789. Relief is available in removal challenges only where officials subject to the challenged removal restrictions cause the alleged injuries, and where those restrictions themselves caused "compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789.

By contrast, in this case, the action challenged by Crossley is the ALJ's decision denying benefits. Crossley has alleged no direct action by former Commissioner Andrew Saul and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf. Collins,* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Crossley cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on his specific claim. As the Commissioner points out in his reply brief, holding Crossley to a lower bar would provide him an "unwarranted remedial windfall," in which many thousands of other disappointed claimants could receive the same relief. (Doc. 23, at 25). Further, Crossley has made no clear allegation that Commissioner Saul's unconstitutional tenure resulted in compensable harm to him. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. There is no allegation suggesting a direct nexus between the adjudication of Crossley's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner. Crossley's allegations merely express general dissatisfaction with the outcome of the adjudication of his SSA disability claim.

Lastly, as the Commissioner notes, several constitutional remedial doctrines support the denial of Crossley's request for a rehearing. The harmless error doctrine dictates that retrospective relief is only appropriate where a statutory provision that violates the Constitution caused the plaintiff some harm. (Doc. 23, at 27).  Here, because Crossley cannot

show that the Commissioner's tenure protection affected the ALJ's decision on his claim, his request for rehearing is denied. Next, "[t]he de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder v. United States*, 515 U.S. 177, 180 (1995). Here, however, the Commissioner's appointment and the appointment of the presiding ALJ were entirely proper. To hold otherwise would risk unwinding untold thousands of SSA disability determinations, endangering the efficient and orderly adjudication of benefits by the SSA and harming the interests of those whose disability claims have yet to be adjudicated— precisely the type of "chaos" the de facto officer doctrine was designed to prevent. *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).

Lastly, the rule of necessity states that a judge must exercise adjudicatory responsibility over a matter, notwithstanding some defect in his or her title or authority, where all other judges share the same defect. *See Philadelphia v. Fox*, 64 Pa. 169, 185 (Pa. 1870). Here, it could not have been an error for the deciding ALJ to hear Crossley's disability claim. If the Commissioner's tenure protection somehow filters down to affect one ALJ within the entire SSA, it affects all such ALJs. To hold that the assigned ALJ should have declined to adjudicate Crossley's claim for that reason would have meant that all other ALJs must decline to adjudicate as well for the same reason. Such widespread action would have left Crossley without a forum to adjudicate his claim and it would have denied him even the opportunity to qualify for benefits.

- 16 -

Accordingly, Crossley has not alleged any connection between the unconstitutional limit on the Commissioner of Social Security's removal and the ALJ's decision denying Crossley's benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

B. CROSSLEY DOES NOT HAVE A RIGHT TO REVIEW ALJ BARLETTA'S 2017 DECISION.

Crossley asserts that the ALJ that heard his 2014 application for Social Security benefits lacked a constitutional appointment as required by the Appointments Clause, and this case should be remanded and that a new hearing be carried out before a different, constitutionally-appointed ALJ regarding Crossley's previous Social Security benefits applications. (Doc. 19, at 7). The Commissioner argues that Crossley never raised an Appointments Clause challenge to ALJ Barletta's 2017 decision, either during administrative proceedings or in a timely appeal to federal court. (Doc. 23, at 35). Thus, as ALJ Barletta's decision became binding on all parties sixty days after the notice of the decision was issued, the Commissioner asserts that Crossley "cannot now challenge any perceived error or defect in the 2017 decision, which he never appealed." (Doc. 23, at 35-36).

Exclusive jurisdiction over a decision to deny or suspend Social Security benefits arises from 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party[,] ... may obtain a review of such decision by a civil action ...". 42 U.S.C. § 405(g). As a general rule,

judicial review is barred unless the Commissioner has issued a "final decision" following a hearing. *Fitzgerald v. Apfel*, 148 F.3d 232, 234 (3d Cir. 1998). To obtain a judicially reviewable final decision, a claimant must first complete the following four-step administrative review process: (1) the claimant receives an initial determination; (2) the claimant requests consideration of an unfavorable initial determination; (3) if the request for reconsideration is denied, the claimant requests a hearing before an ALJ; and (4) the claimant, if unsatisfied with the ALJ's determination, requests a review by the Appeals Council. 20 C.F.R. § 416.1400(a); *Callender v. Soc. Sec. Admin.*, 275 F. App'x 174, 175 (3d Cir. 2008). Failure to exhaust each step of this process deprives a court of subject matter jurisdiction. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

Here, in a written decision dated May 26, 2017, ALJ Barletta denied Crossley's applications for disability insurance benefits and supplemental security income. (Doc. 15-4, at 2). The SSA notified Crossley that he had a right to file an appeal of the decision with the Appeals Council within sixty days of the day that Crossley received the notice of the unfavorable decision. (Doc. 15-4, at 2). The notice of decision also warned Crossley that he had a right to file a new application, but by filing a new application instead of appealing the unfavorable decision, Crossley "might lose some benefits or not qualify for benefits at all." (Doc. 15-4, at 3). There is no evidence in the record to suggest that Crossley filed for review of ALJ Barletta's decision with the Appeals Council or in federal court. Instead, Crossley filed another application for Title XVI benefits on August 31, 2018, alleging disability beginning May 24, 2017. (Doc. 15-6, at 2). Thus, ALJ Barletta's became a final agency decision that is binding on all the parties sixty days after the notice of decision was mailed to Crossley. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 416.1455(b), 416.1487.

Crossley asserts that because he "never had the hearing he requested in March 2015 before a constitutionally appointed ALJ, the Court should remand his case for a new hearing before a different, constitutionally appointed ALJ with respect to his claims for DIB and SSI." (Doc. 19, at 8). The Commissioner responds that Crossley does not offer any rationale as to why he is entitled to remand pursuant to the Appointments Clause or why he failed to appeal ALJ Barletta's decision in the first place. (Doc. 23, at 36). The Court finds that remand on this issue is not warranted. Crossley only brings this Appointments Clause challenge in this action, which deals with a decision rendered by ALJ Dominick on January 22, 2020, denying Crossley's request for benefits.[4] (Doc. 15-2, at 69). ALJ Dominick addressed Crossley's previous applications for benefits in his decision, stating "[a]s the current application alleges on onset date of disability of May 24, 2017, the undersigned finds no basis to reopen these prior applications." (Doc. 15-2, at 72).

Based on the foregoing, the record clearly demonstrates that Crossley has failed to satisfy the requirements of § 405(g) and 20 C.F.R. § 416.1400(a) by not seeking Appeals Council review of ALJ Barletta's decision to deny benefits. Consequently, this Court lacks jurisdiction over this action. *See, e.g., Sims*, 530 U.S. at 107 ("If a claimant fails to request review from the Council ... such a claimant may not obtain judicial review because he has failed to exhaust administrative remedies.") (internal citations omitted).

---

[4] On July 12, 2018, the Commissioner ratified the appointment of all ALJs. *See* SSR 19-1p. Thus, at all times relevant to the decision rendered on January 22, 2020, ALJ Dominick has been properly appointed by the Commissioner of Social Security. The Acting Commissioner's final decision rendered on October 8, 2020, was issued by a properly-appointed ALJ. *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).

C. The ALJ's consideration of the medical opinions is supported by substantial evidence in the record.

Crossley submits that the ALJ rejected the opinions of his primary care physician, Ivor Lewis, M.D. ("Dr. Lewis"), and the consultative psychologist, Jennifer Betts, PsyD ("Dr. Betts"). (Doc. 19, at 8-18). The Commissioner responds that the ALJ followed the applicable regulatory framework, discussing the supportability and consistency of both opinions and that substantial evidence supports the ALJ's fact-finding. (Doc. 23, 39-45).

The Third Circuit has ruled that the ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 416.920, 416.945; SSR 96-8p. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p; *see Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 416.920c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate

- 21 -

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

On February 6, 2019, Dr. Betts conducted a mental status evaluation of Crossley. (Doc. 15-9, at 37). Dr. Betts opined that Crossley's demeanor and responsiveness to questions were cooperative but depressed, and that his manner of relating, social skills, and overall presentation was fair. (Doc. 15-9, at 39). Dr. Betts reported that Crossley described his mood as depressed and that, possibly due to limited cognitive functioning, Crossley has limited attention and concentration, impaired recent and remote memory skills, poor insight, and poor judgment. (Doc. 15-9, at 39). Dr. Betts diagnosed Crossley with major depressive disorder, current episode, moderate with anxious distress; PTSD; intellectual disability, provisional; and specific learning disorder, provisional. (Doc. 15-9, at 40). In a questionnaire assessing Crossley's ability to do work-related activities based on her medical opinion, Dr. Betts opined that Crossley has no limitations in understanding and remembering simple instructions, mild limitations in carrying out simple instructions, and moderate limitations in making judgments on simple work-related decisions and understanding and remembering

complex instructions. (Doc. 15-9, at 42). Further, Dr. Betts opined that Crossley has marked limitations in his ability to carry out complex instructions and make judgments on complex work-related decisions. (Doc. 15-9, at 42). Dr. Betts also opined that Crossley has marked limitations in his ability to interact appropriately with supervisors, co-workers, and the public and to respond appropriately to usual work situations and changes in a routine work setting. (Doc. 15-9, at 43).

On October 1, 2019, Dr. Lewis submitted a questionnaire assessing Crossley's ability to do work-related activities based on his medical opinion. (Doc. 15-9, at 119). Dr. Lewis opined that Crossley could occasionally and frequently lift and carry less than ten pounds. (Doc. 15-9, at 119). He noted that Crossley could stand and walk less than two hours and could sit for about two hours during an eight-hour day. (Doc. 15-9, at 119). Dr. Lewis opined that Crossley would need to change positions after sitting for ten minutes and standing for five minutes, the opportunity to shift at will from sitting or standing/walking, and to lie down at unpredictable intervals two to four times during a work shift. (Doc. 15-9, at 119-20). To support the limitations he described, Dr. Lewis said that Crossley experiences pain, stiffness, decreased range of motion, and decreased strength. (Doc. 15-9, at 120). Dr. Lewis also opined that Crossley could occasionally climb stairs, but never twist, stoop, crouch, or climb stairs. (Doc. 15-9, at 120). Dr. Lewis noted that Crossley's handling, feeling, and pushing/pulling functions were affected by his impairments, but his handling and fingering functions were not affected. (Doc. 15-9, at 120). Dr. Lewis opined that Crossley should avoid concentrated exposure to extreme heat, noise, dust, fumes, odors, gases, and poor ventilation, and should avoid even moderate exposure to extreme cold, wetness, humidity, and hazards (machinery,

heights, etc.). (Doc. 15-9, at 120). Lastly, Dr. Lewis opined that Crossley would be absent from work more than three times per month due to his impairments. (Doc. 15-9, at 120).

The ALJ properly applied the new set of Social Security Regulations for evaluating medical evidence that eliminates the hierarchy of medical opinions and states that an ALJ will not defer to any medical opinions, even those from treating sources. (Doc. 14-2, at 25-26); *see* 220 C.F.R. § 416.920c(a). In determining whether the claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a); *see Williams*, 970 F.2d at 1186 (plaintiff's "subjective complaints must be substantiated by medical evidence."). Additionally, in evaluating the intensity and persistence of pain and other symptoms, the ALJ should consider the claimant's daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures the claimant uses to address the pain or other symptoms. 20 C.F.R. § 416.929(c)(3). "To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record." *Stancavage v. Saul*, 469 F.Supp.3d 311, 337 (M.D. Pa. 2020).

Evaluating the medical opinions, the ALJ found that the opinions of Dr. Lewis and Dr. Betts were not persuasive. (Doc. 15-2, at 81-82). First, the ALJ explained that Dr. Lewis's opinion is not well supported by the overall medical evidence of record, including diagnostic

test results or clinical findings the ALJ discussed earlier in his decision. (Doc. 15-2, at 81). Specifically, the ALJ stated that "Dr. Lewis' examinations continually noted [Crossley] to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination." (Doc. 15-2, at 81). For example, Dr. Lewis opined that Crossley could frequently carry less than ten pounds, due to decreased strength, and never perform the postural activities of twisting, stooping, or crouching, due to decreased range of motion. (Doc. 15-9, at 119). However, Dr. Lewis's treatment notes state that Crossley's strength was routinely "normal" and that he had a "normal range of motion." (Doc. 15-9, at 87; Doc. 15-9, at 91; Doc. 15-9, at 95). For those reasons, the ALJ found that Dr. Lewis's opinion was not supported by the medical evidence. (Doc. 15-2, at 81).

As to consistency, the AJ found that "Dr. Lewis' opinions, especially in regards to exertional limitations, an overstatement and not supported by the medical or non-medical evidence of record." (Doc. 15-2, at 81). For example, Dr. Lewis opined that Crossley's ability to handle, feel, and push/pull was limited. (Doc. 15-9, at 120). However, earlier in his decision, the ALJ considered Crossley's activities of daily living and noted that Crossley reported he was able to independently cook, clean, do laundry, shop, shower, bathe, and dress himself, as well as care for his mother, work on his car, walk his dog, and play video games. (Doc. 15-2, at 8). The ALJ stated that while he acknowledged that Crossley "has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that [Crossley] can perform work within the above parameters on a sustained and continuous basis." (Doc. 15-2, at 81); *see* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities"); *see*

- 25 -

*also Seney v. Comm'r of Soc. Sec.*, 585 F. App'x 805, 809 (3d Cir. 2014) (affirming the ALJ's decision to consider the claimant's "daily functions, including managing her own personal care, cooking, childcare, cleaning, and shopping," when evaluating subjective complaints). Further, the ALJ found that Dr. Lewis's opinion was inconsistent with the medical record. The ALJ reviewed other medical opinions and objective medical examinations and found that "[p]hysical examinations routinely note [Crossley] to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination." (Doc. 15-2, at 79). Thus, the ALJ properly evaluated Dr. Lewis's opinion according to the requirements of Social Security regulations.

With regards to Dr. Betts' opinion, the ALJ found that Dr. Betts' opinion "is not well supported by the overall medical evidence, including the diagnostic test results or the findings from objective mental examinations." (Doc. 15-2, at 82). Discussing supportability, the ALJ explained that Dr. Betts' opinion relied "solely and exclusively on one examination" of Crosley, "and not upon objective long-term observations and examinations." (Doc. 15-2, at 82); *see Northington v. Berryhill*, No. 17-2922, 2018 WL 2172565, at *4 (E.D. Pa. Feb. 27, 2018) (substantial evidence supported ALJ's finding that medical opinion was entitled to little weight "in light of the brief and limited nature" of the physician's treatment of the plaintiff). Regarding the consistency of Dr. Betts' opinion, the ALJ found that Dr. Betts' one-time assessment of Crossley was not persuasive in relation to Crossley's longitudinal mental health treatment records. (Doc. 15-2, at 82). For example, the ALJ noted that his formal mental health counseling records found Crossley to have a depressed mood and at times flat affect, but that he was otherwise well-groomed, cooperative, talkative, with good eye contact, soft and slow speech, and full orientation. (Doc. 15-2, at 82). The ALJ stated that those treatment

records "would support [Crossley] performing unskilled work," but "would not support any marked limitation findings." (Doc. 15-2, at 82). Thus, the ALJ concluded that Dr. Betts' opinion was not persuasive. (Doc. 15-2, at 82).

Crossley asserts that the ALJ erroneously found that he was able to perform sedentary work based on the ALJ's lay interpretation of the medical evidence, "without the support of any medical opinion of record." (Doc. 19, at 13-14). Relying on *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986), Crossley argues that no medical opinion suggested Crossley could perform sedentary work, so the ALJ's RFC is unsupported by substantial evidence. (Doc. 19, at 14). In *Doak*, The Commissioner avers, and the Court agrees, that Crossley's reliance on *Doak* is misplaced because the *Doak* decision predates Social Security regulatory amendments and the ALJ is not prohibited from making an RFC determination even if no medical opinion has specifically made the same findings. (Doc. 23, at 42-43); *see Cummings v. Colvin,* 129 F. Supp. 3D 209, 214-17 (W.D. Pa. 2015) ("[R]eliance on *Doak* and the other cases cited in [plaintiff's] brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided.").

In a case involving the ALJ's reliance on, or departure from treating medical opinion support, or in a case involving the lack of medical opinion evidence altogether, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704; *see Rathburn v. Berryhill*, 3:17-CV-00301, 2018 WL 1514383, at *6-7 (M.D. Pa. Mar. 12, 2018) (substantial evidence did not support ALJ's RFC assessment where ALJ did not explain what records he relied on to arrive at the limitations). Here, the ALJ specifically addressed findings made by each physician and consultative examiner, incorporating their explanations into Crossley's RFC, as well as Crossley's subjective

symptom allegations in formulating his RFC determination, which accounted for Crossley's mental and physical limitations. (Doc. 15-2, at 77-78). Additionally, contrary to Crossley's assertion, on March 14, 2019, the state agency physician, David Hutz, M.D. ("Dr. Hutz"), opined that Crossley demonstrates an RFC for sedentary work. (Doc. 15-4, at 38). The ALJ found that Dr. Hutz's opinion was persuasive because "it is generally supported by and consistent with the medical evidence of record and activities of daily living previously discussed." (Doc. 15-2, at 80). The ALJ provided a thorough explanation for making his RFC determination and affording little weight to the medical opinions of Dr. Lewis and Dr. Betts. *See Horodenski*, 215 F. App'x at 189.

In reconciling the contrasting medical evidence and medical opinions of record with the inconsistencies in Crossley's abilities and limitations, the ALJ properly concluded that Dr. Lewis's and Dr. Betts' opinions were "not persuasive" and "not well supported by the overall medical evidence." (Doc. 15-2, at 81-82). It appears that Crossley is requesting that this Court re-weigh the evidence, which this Court cannot do. *See Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder."). Accordingly, the Court finds that substantial evidence supports the ALJ's consideration of the medical opinions of Dr. Lewis and Dr. Betts.

D. THE ALJ'S HYPOTHETICAL QUESTION TO THE VE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Lastly, Crossley argues that the ALJ's hypothetical questions posed to the VE failed to incorporate all of his credibly-established limitations, so the VE's response cannot constitute substantial evidence of work available in the national economy for Crossley. (Doc.

19, at 18-19). Crossley also argues that the VE's testimony in response to the ALJ's hypothetical question did not constitute substantial evidence of jobs in significant numbers that Crossley could perform because the VE could not provide the exact number of jobs available for "ampoule sealer." (Doc. 19, at 20). The Commissioner avers that he ALJ submitted a proper hypothetical question to the VE that included all of Crossley's credibly-established functional limitations. (Doc. 23, at 47). Further, the Commissioner asserts that the VE was not obligated to provide the exact number of jobs available for "ampoule sealer" and that "[e]ven if the Ampoule Sealer job did not exist in significant numbers, [Crossley] could still perform the representative jobs of sorter and production laborer, to which [Crossley] has raised no objections." (Doc. 23, at 48).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004) (the ALJ need only include in the hypothetical questions impairments that are supported by the record). "A hypothetical question posed to the [VE] must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [VE]'s answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. The ALJ, however, is not required to submit to the [VE] every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the VE all of a claimant's

credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer*, 186 F.3d at 431).

The ALJ did not err in his hypothetical question to the VE. Crossley argues that the hypothetical questions erroneously omitted the limitations assessed by Dr. Lewis and Dr. Betts, which the ALJ should have adopted. (Doc. 19, at 19). Crossley contends that Dr. Lewis's and Dr. Betts' assessed limitations, if credited, would have compelled a finding of disability, but the ALJ omitted these limitations from his hypothetical questions. (Doc. 19, at 19). The Commissioner responds that the ALJ was under no obligation to include the limitations assessed by Dr. Lewis and Dr. Betts because the ALJ reasonably found that the opinions of Dr. Lewis and Dr. Betts were not persuasive. (Doc. 23, at 46).

The ALJ was not required to include all of the limitations assessed by Dr. Lewis and Dr. Betts. The ALJ was only required to include all of Crossley's credibly established limitations that are supported by the record. *See Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 431. Further, as discussed *supra*, the Court has found that the ALJ properly assessed the opinions of Dr. Lewis and Dr. Betts and determined that they were not persuasive. (Doc. 15-2, at 81-82). Therefore, the Court finds that the ALJ's hypothetical questions posited to the VE adequately set forth all of Crossley's credibly established limitations.

Crossley also avers that "the [VE] conceded on cross-examination that she could not provide numbers of the jobs to which she testified in response to the ALJ's hypothetical because the only data available is for broad classifications such as "hand packagers,["] and "[t]here's no specific data for individual DOT job titles" such as ampoule sealer. (Doc. 19, at 19). Accordingly, Crossley argues that "the jobs to which the [VE] testified in response to the ALJ's hypothetical did not constitute substantial evidence of jobs in significant numbers

which [Crossley] could perform." (Doc. 19, at 20). The Commissioner asserts that the VE provided an example job that fell within the broader range of Hand Packer and Packager jobs, of which there were 28,000 jobs nationally, which is a significant number. (Doc. 23, at 47-48). Further, the Commissioner argues that the ALJ is only required to identify one job within a claimant's capacity that exists in significant numbers in the national economy and that even if the ampoule sealer job did not exist in significant numbers, Crossley could still perform the representative jobs of sorter and production laborer, to which Crossley raised no objections. (Doc. 23, at 48).

Jobs listed by the VE are only representative examples—not an exhaustive list—of jobs that a claimant was capable of performing. *Rutherford*, 399 F.3d at 557. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). Here, during the administrative hearing, the ALJ presented the VE with multiple hypothetical questions that included Crossley's credibly-established limitations. (Doc. 15-3, at 39-41). The VE responded, providing three examples of representative jobs that are available in significant numbers in the national economy that Crossley would be able to perform with the provided limitations. (Doc. 15-3, at 40-42). The VE provided a representative job of "ampoule sealer" that falls within the broader job classification of "hand packer and packagers," of which there are 28,000 jobs nationally. (Doc. 15-3, at 49). This number is significant and indicates that there exists in the national economy jobs that Crossley can perform with the ALJ's RFC determination. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (substantial evidence supported ALJ's RFC

where VE indicated there were about 200 jobs available in the national economy that the plaintiff could perform).

Accordingly, the Court finds that the ALJ committed no error as to this issue.

V. **CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Crossley disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Crossley. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


Dated: December 31, 2021                     *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**

- 32 -